UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DWAYNE DAVIS,

        Petitioner,

v.                                      Case No. 04-CV-72281-DT

KENNETH McKEE,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Dwayne Davis, presently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his convictions for conspiracy to deliver 650 or more grams of cocaine,[1] two counts of delivery of 225 or more but less than 650 grams of cocaine,[2] and two counts of delivery of 50 or more but less than 225 grams of cocaine.[3] Petitioner was convicted of the above offenses following a jury trial with his co-defendants Winston Moore and Dwayne Harris in Wayne County Circuit Court. For the reasons stated below, the petition for writ of habeas corpus will be denied.

---

[1] Mich. Comp. Laws §§ 750.157a; 333.7401(2)(a)(i).

[2] Mich. Comp. Laws § 333.7401(2)(a)(ii).

[3] Mich. Comp. Laws § 333.7401(2)(a)(iii).

1

## I.  BACKGROUND

The facts stated herein are drawn from testimony given at Petitioner's trial. On March 12, 1998, police executed a search warrant at the home of one Jadd Morgan in Detroit, Michigan and discovered over one hundred and twelve grams of cocaine and a firearm.  Morgan told the police that he had purchased this cocaine from Winston Moore at Petitioner's house.  Morgan testified that Moore, known also as "Unc," and Petitioner, known as "Shorty," were said to be cousins, and that Morgan had purchased cocaine from Moore for eight months to a year prior to the raid on approximately twenty occasions.  Morgan said that he bought the cocaine from Moore with the intent of selling it to others, and he agreed to cooperate.

The police arranged for Morgan to engage in a controlled purchase of narcotics from Moore on June 27, 1998.  They gave Morgan pre-recorded funds and sent him to pick up Moore while under surveillance.  Moore and Morgan drove to Petitioner's house, where a phone call was made.  Moore and Morgan then drove to the French Quarters Apartments in Detroit, Michigan.  Another man arrived in a car and parked behind the vehicle in which Moore and Morgan had arrived.  Morgan gave Moore the money to purchase the cocaine, and Moore got out of the car and spoke with the third man. The third man got out of his car, and he and Moore went into a nearby building for a few minutes.  Moore came out of the building and handed Morgan a bag containing 180.95 grams of cocaine.

On August 29, 1998, Morgan went to Moore's house to make a second controlled drug purchase for the police.  Moore made a telephone call, and shortly thereafter Petitioner and another unidentified person arrived at Moore's house and delivered

124.27 grams of cocaine to Morgan. The police subsequently instructed Morgan to attempt to purchase cocaine directly from Petitioner. The police indicated that they were hoping to get Phillip Young (also known as "Yah" or "Yabu") who lived on the same street as Petitioner. On October 31, 1998, Morgan met with Petitioner at his home. Petitioner made a phone call and requested some cocaine. As Petitioner connected that call, police were able to detect that a telephone had rung at Phillip Young's house. Co-defendant Harris arrived at Petitioner's house shortly thereafter and delivered 94 grams of cocaine to Morgan.

On December 19, 1998, Morgan bought 248.93 grams of cocaine from Petitioner, and this cocaine was delivered to Petitioner by an unidentified man. On February 7, 1999, Morgan purchased 249.11 grams of cocaine from Petitioner, which had also been delivered to Petitioner by another unidentified person. Police found some marked funds from the February 7 drug purchase in Harris' home during a February 8, 1999 search. Morgan testified that Moore told him Phillip Young had been the main source for the cocaine. Various police officers testified to the drug investigation and the police surveillance of the various controlled narcotics purchases made by Morgan.

Petitioner's convictions of one count of conspiracy to deliver cocaine and four counts of delivery of differing quantities of cocaine were affirmed on appeal. *People v. Davis,* No. 225862, slip op. at 3 (Mich. Ct. App. Jul. 19, 2002); *leave to appeal denied at* 658 N.W. 2d 486 (Mich. 2003); *reconsideration denied at* 662 N.W. 2d 761 (Mich. 2003). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. [Petitioner] was denied due process and is entitled to reversal of his

conviction where there was insufficient evidence to support his conviction for conspiracy to deliver 650 grams of cocaine in that there was no showing of a delivery, intent to deliver, or conspiracy to deliver over 650 grams of cocaine and it was clearly not the legislative intent to allow prosecution for conspiracy to deliver over 650 grams of cocaine by aggregating a number of unconnected smaller sales.

II. [Petitioner] was denied due process and is entitled to relief where the trial court failed to clearly and correctly instruct the jury on whether various amounts of cocaine could be aggregated to total over 650 grams of cocaine.

(Pet. Attach. A.)  On July 22, 2005, the court granted Petitioner's motion to amend the habeas petition, and on November 28, 2005, Petitioner filed an amended petition for writ of habeas corpus which raised the same claims and made the same arguments that were raised in the original habeas petition.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An unreasonable application occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

4

*Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

#### A. Claim # 1. The sufficiency of evidence claim.

Petitioner first claims that there was insufficient evidence to permit the separate drug sales in this case to be aggregated in order to establish that Petitioner conspired to deliver over 650 grams of cocaine. A reviewing court examines claims that the evidence at trial was insufficient for a conviction by asking whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, a court must determine whether the state court's *Jackson* review was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002) (internal citations omitted). A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell,* 194 F. Supp. 2d at 647. A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.*

Under Michigan law, conspiracy is an agreement, either express or implied, between two or more persons to commit an unlawful or criminal act. *People v. Weathersby*, 514 N.W.2d 493, 501 (Mich. Ct. App. 1994). Because conspiracy is a specific intent crime, it requires both an intent to combine with others and the intent to accomplish the illegal objective. *People v. Carter*, 330 N.W.2d 314, 319 (Mich. 1982). Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 478 N.W.2d 681, 688 (Mich.Ct.App. 1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.* at 689. Finally, a defendant who knows that others have combined to violate the law, and who knowingly cooperates to further the object of the conspiracy, becomes a party to the conspiracy even if he is only acquainted with one of them. *See People v. Heidt,* 20 N.W. 2d 751, 758 (Mich. 1945) (internal quotation omitted).

The elements of conspiracy to deliver controlled substances require: (1) the defendant to possess the specific intent to deliver the statutory minimum as charged; (2) his coconspirators to possess the specific intent to deliver the statutory minimum as charged; and (3) the defendant and his coconspirators to possess the specific intent to combine to deliver the statutory minimum as charged to a third person. *People v. Justice*, 562 N.W.2d 652, 659 (Mich. 1997). Under Michigan law, multiple drug sales which involve the delivery of small amounts may be aggregated to reach the necessary weight amounts where such conduct is shown to be part of a single scheme or plan to

deliver the larger amount of narcotics charged. *See People v. Porterfield*, 339 N.W.2d 683, 686-87 (Mich. Ct. App. 1983).

In the present case, there was sufficient evidence presented at Petitioner's trial for a rational trier of fact to conclude that Petitioner had conspired with others to deliver over 650 grams of cocaine. Morgan testified that he purchased the 112 grams of cocaine in March of 1998 from co-defendant Moore at Petitioner's house. Morgan testified that on June 27, 1998, Moore took him to Petitioner's house, where a telephone call was made. Shortly thereafter, Moore and Morgan went to the French Quarter Apartments, where Moore purchased 180.95 grams of cocaine from an unidentified man and delivered it to Morgan. In August of 1998, Morgan went to Moore's house to purchase more cocaine. Moore telephoned Petitioner, who came over to Moore's house and delivered 124.27 grams of cocaine. Petitioner was accompanied by another individual when he delivered the cocaine on this occasion.

On October 31, 1998, Morgan went to Petitioner's house to purchase cocaine. Petitioner made a phone call to request some cocaine. Shortly thereafter, co-defendant Harris arrived with 94 grams of cocaine. On December 19, 1998, Morgan purchased 248.93 grams of cocaine from Petitioner, which was delivered to Petitioner by an unidentified man. On February 7, 1999, Morgan again purchased 249.3 grams of cocaine from Petitioner, which was again delivered to Petitioner from an unidentified person. Proceeds from this drug sale were recovered the following day at co-defendant Harris' house.

When viewed in a light most favorable to the prosecution, a rational trier of fact could infer that Petitioner, Moore, Harris, and other individuals had conspired to deliver

over 650 grams of cocaine.  As the Michigan Court of Appeals indicated in its opinion, the fact that Petitioner on several occasions was able to quickly obtain large quantities of cocaine from co-conspirators was sufficient evidence of a continuing enterprise to deliver large amounts of cocaine which aggregated over 650 grams to Morgan over a period of time.  *Davis,* slip op. at 2-3.  Because a rational trier of fact could have concluded that Petitioner, Moore, Harris, and others conspired to deliver over 650 grams of cocaine to Morgan, the Michigan Court of Appeals' conclusion that there was sufficient evidence to convict Petitioner of the conspiracy charge was not an unreasonable.

To the extent that Petitioner is challenging the fact that Michigan law permits smaller narcotics sales to be aggregated to reach the required weight amount for a conviction for conspiracy to deliver over 650 grams of cocaine, Petitioner would not be entitled to habeas relief on this claim.  What is essential to establish the elements of a crime is a matter of state law.  *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002).  Petitioner is therefore not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The jury instruction claim.

Petitioner next contends that the trial court failed to clearly instruct the jury on whether the various cocaine sales could be aggregated to total over 650 grams of cocaine.  Respondent contends that this claim is procedurally defaulted, because Petitioner failed to object to the trial court's instructions or to request the instruction that Petitioner claims should have been given.

The Michigan Court of Appeals held that because Petitioner had failed to object to the instructions that were given or to request the instruction urged on appeal, the

issue would be reviewed only for plain error. Because Petitioner failed to establish plain error which affected his substantial rights, the Michigan Court of Appeals rejected his claim. *People v. Davis,* Slip. Op. at 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas relief is also barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object to the instructions at trial, or to request the instruction that Petitioner alleges should have been given, Petitioner had failed to preserve his instructional error claim. The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's jury instruction claim does not constitute a waiver of his procedural default.

*Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000).  Instead, this court should view the Michigan Court of Appeals' review of a petitioner's claim for plain error as enforcement of the procedural default.  *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).  Thus, Petitioner's second claim is procedurally defaulted.

In the present case, Petitioner has failed to offer any reasons to excuse the procedural default.  Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.  *Smith*, 477 U.S. at 533.  Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider this claim in spite of the procedural default. Petitioner's sufficiency-of-evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule.  *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the court declined to review the merits of his procedurally defaulted claims.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999).  Accordingly, Petitioner's second  claim is procedurally defaulted.

## IV.  CONCLUSION

IT IS ORDERED that Petitioner's June 21, 2004 "Petition for Writ of Habeas Corpus" [Dkt. #1] and November 28, 2005 "Amended Petition for Writ of Habeas Corpus" [Dkt. ## 27 and 28] are DENIED.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 26, 2006, by electronic and/or ordinary mail.


s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522